IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 24-cv-01548-PAB-MDB

C.J.,

      Plaintiff,

v.

SANTOSA AND BROTHER INC.,

      Defendant.

---

## ORDER

---

This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 23].  On August 29, 2024, plaintiff C.J. filed a response.  Docket No. 29.  On September 12, 2024, defendants Santosa and Brother Inc. ("Santosa") filed a reply.  Docket No. 31.  The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I.    BACKGROUND[1]**

In 2018, C.J. was trafficked for sex at the Days Inn by Wyndham Colorado Springs/Garden of the Gods located at 4610 Rusina Rd., Colorado Springs, Colorado 80907 (the "Days Inn").  Docket No. 18 at 1, 2, ¶¶ 2, 6.  Furthermore, C.J.'s sex trafficker had commercial dealings with Santosa when he "deliberately and repeatedly selected the subject hotel as a venue to engage in sex trafficking in 2018" and that

---

[1] The facts below are taken from C.J.'s amended complaint, Docket No. 18, and the well-pled allegations are presumed to be true, unless otherwise noted, for purposes of ruling on defendants' motion to dismiss.

Santosa wished to "reinstate for profit when Plaintiff's trafficker repeatedly rented rooms" that were used to traffic C.J. and other victims. *Id*. at 5, 7 ¶¶ 27, 41. C.J. was "induced by force, fraud, and coercion by her trafficker to engage in commercial sex" and was "psychologically and physically prohibited from escape from her trafficker". *Id*. at 2, ¶ 4. C.J. was "under fear of severe harm or death if she did not comply" with her trafficker and was subject to "personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day". *Id*. at 8, ¶ 46.

Santosa "knowingly benefited" from her sex trafficking at the Days Inn by "receiving payment for the rooms rented by her trafficker (or at the direction of her trafficker) that were used for sex trafficking, including as to the Plaintiff, in violation of the TVPRA [the Trafficking Victims Protection Reauthorization Act] in 2018." *Id*. at 5, ¶ 28. C.J.'s trafficker took "proceeds derived from the sex trafficking occurring" at the Days Inn and used them "to continue to pay for rooms rented at the subject hotel during the time that Plaintiff was being sex trafficked there in violation of the TVPRA." *Id*. at 6, ¶ 31. Santosa also "received other financial benefit[s]" that included Santosa receiving payment for its Wi-Fi services, which C.J.'s trafficker utilized to advertise C.J.'s trafficking online. *Id*., ¶ 32. C.J.'s trafficker had "direct interaction with hotel employee(s) and staff by means of paying or compensate[ing] employee(s) and staff member(s) to act as lookout(s)/informant(s) for Plaintiff's trafficker so as to inform the trafficker of police activity or other similar type alerts." *Id*., ¶ 34.

Santosa is the owner and operator of the Days Inn and "controlled the training, policies, and decisions on implementation and execution of anti-trafficking policies,

protocol, rules[,] and guidelines" for the Days Inn. *Id.* at 2, ¶ 8. Santosa was "on notice of the high likelihood" of sex trafficking occurring at the Days Inn due to the passage of the Trafficking Victims Protection Act ("TVPA") and TVPRA. *Id.*, ¶ 9. By 2012, training guides and videos were available through the American Hotel Lodging Association and ECPAT-USA that showed the "critical role that the hotel industry plays in enabling the sex trade industry." *Id.* at 2-3, ¶ 10. Santosa failed to implement sufficient educational and training programs and policies to prevent and identify sex trafficking at the Days Inn. *Id.* at 3, ¶ 11. Had Santosa not failed to do so, "it is more likely than not that the injuries suffered by the Plaintiff at the subject hotel" in violation of the TVPRA "would have been prevented or mitigated." *Id.*, ¶¶ 13-14. Santosa "failed to act upon the obvious and overt signs alerting them to the sex trafficking" that was taking place at the Days Inn. *Id.*, ¶ 12. Santosa's hotel staff "witnessed and observed on a regular and frequent basis signs and indicators of sex trafficking." *Id.* at 8, ¶ 43. Specifically, Santosa failed to recognize "many red flags" at the Days Inn, including:

> (a) constant foot traffic of sex buyers to the trafficker rented rooms to have sex with trafficked victims;
>
> (b) trafficked victims would walk around hotel grounds drug impaired and alcohol impaired, sleep impaired, hygiene impaired, behavior impaired, with bruises, and malnourished and in sexually explicit clothing;
>
> (c) suspicious individuals loitering outside the hotel rooms when a sex buyer would enter a room;
>
> (d) inside the hotel rooms rented by the trafficker (or at the direction of the trafficker) there was a suspicious bunch of people and suspicious items including weapons, cash, drugs, drug paraphernalia, condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;
>
> (e) trafficker monitoring hotel hallway or door of room or walking hotel perimeter;

(f) Plaintiff, C.J. soliciting for sex buyer business in common areas of the subject hotel at the direction of the trafficker; and

(g) other commonly known sex trafficking red flags which the above captioned Defendant knew or should have known of had anti-trafficking measures been timely and properly implemented at the hotel.

*Id*. at 7-8, ¶ 42.  C.J. interacted with Santosa's hotel staff "on a daily basis" and the staff members also "witnessed and observed Plaintiff, her trafficker, as well as a steady procession of sex buyers going in and out of the subject rented rooms."  *Id*. at 8, ¶ 45. C.J. was able to identify the hotel staff "by her knowing of the individual and/or by means of the staff wardrobe/nametag/hotel logo and/or by means of a staff member being in an employee restricted area."  *Id*., ¶ 44.

## II.  LEGAL STANDARDS

### A.  <u>Motion to Dismiss</u>

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible."  *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)).  Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted).  A court, however, does not need to accept conclusory allegations.  *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th

4

Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

### B. The Trafficking Victims Protection Reauthorization Act

In 2000, Congress enacted the TVPA, creating criminal offenses for forced labor and sex trafficking.  Pub. L. No. 106-386, 114 Stat. 1464 (2000).  The original Act did not contain a private right of action.  *Griffin v. Alamo*, 2016 WL 7391046, at *2 (W.D. Ark. Dec. 21, 2016).  In 2003, however, Congress added a civil right of action for victims to sue their traffickers by enacting the TVPRA.  In 2008, Congress further amended the law to permit victims to sue those who facilitate trafficking ventures.  Pub. L. No. 108-193, 117 Stat. 2875 (2003).  In 2022, Congress amended the law to provide that

whoever knowingly benefits, as well as one who attempts or conspires to benefit, from a

TVPRA violation is liable.  The 2022 law states:

> An individual who is a victim of a violation of this chapter may bring a civil action
> against the perpetrator (or whoever knowingly benefits, or attempts or conspires
> to benefit, financially or by receiving anything of value from participation in a
> venture which that person knew or should have known has engaged in an act in
> violation of this chapter) in an appropriate district court of the United States and
> may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  Thus, the TVPRA "creates a civil cause of action for 'a victim of a

violation of this chapter,'" which includes provisions that prohibit "sex trafficking" under

18 U.S.C. § 1591, against "whoever knowingly benefits . . . from participation in a

venture which that person knew or should have known has engaged in an act in

violation of this chapter."  *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464,

467-68 (E.D.N.C. 2024) (quoting 18 U.S.C. § 1595(a)).

Sex trafficking includes the use "of force, threats of force, fraud, coercion . . . , or

any combination of such means" "to cause [a] person to engage in a commercial sex

act."  18 U.S.C. § 1591(a).  The act defines "coercion" as "threats of serious harm to or

physical restraint against any person" or "any scheme, plan, or pattern intended to

cause a person to believe that failure to perform an act would result in serious harm to

or physical restraint against any person."  18 U.S.C. § 1591(e)(2)(A)-(B).

To state a claim under § 1595(a) against a beneficiary of sex trafficking, a plaintiff

must allege that "(1) a venture has engaged in an act in violation of Section 1591, (2)

the defendant knew or should have known that the venture had violated Section 1591,

(3) the defendant participated in that venture, and (4) the defendant knowingly benefited

from its participation."  *G.G. v. Salesforce.com, Inc.,* 76 F.4th 544, 553 (7th Cir. 2023).

III.    **ANALYSIS**

    A.    <u>**Motion to Dismiss**</u>

C.J. brings a claim against Santosa under § 1595(a) for knowingly benefitting

from participation in a venture which Santosa knew or should have known was engaged

in sex trafficking.  Docket No. 18 at 4-9.  Santosa makes three arguments in its motion

to dismiss.  First, Santosa argues that C.J. fails to plausibly allege that Santosa was

engaged in a venture with C.J.'s trafficker.  Docket No. 23 at 5-9.  Second, Santosa

argues that C.J. does not plausibly allege that Santosa "knew or should have known"

that C.J. was a victim of a sex trafficking venture.  *Id*. at 11-13.  Third, Santosa contends

that C.J. does not plausibly allege that the venture violated the TVPRA.  *Id*. at 9-11.

    *1.    Whether Santosa participated in a venture*

Santosa argues that C.J. does not plausibly allege that Santosa participated in a

venture with C.J.'s trafficker.  *Id*. at 5-9.  Specifically, Santosa argues that C.J. makes

the following insufficient allegations: that Santosa received payments for rooms that

were used to traffic C.J. and those payments were derived from the proceeds of C.J.'s

trafficking, Santosa received payment for use of its Wi-Fi and that the Wi-Fi was then

used to advertise C.J.'s sex trafficking, and Santosa's hotel employees were paid by

C.J.'s trafficker to act as lookouts for police activity.[2]  *Id*. at 6.

---

[2] The Court rejects Santosa's argument that the allegation that Days Inn employees acted as lookouts for C.J.'s trafficker cannot be imputed to Santosa.  Docket No. 23 at 8 n.1.  When a plaintiff sues the hotel franchisee (i.e., the hotel owner and operator), as C.J. has done here, courts will look to the conduct of hotel staff, including where it is alleged that the staff received payment from the trafficker, to determine the defendant's liability under 18 U.S.C. § 1595.  *See, e.g.*, *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d 1228, 1236 (N.D. Ga. 2022); *J.C. v. I Shri Khodiyar, LLC*, 624 F. Supp. 3d 1307, 1317 (N.D. Ga. 2022); *A.B. v. Interstate Mgmt. Co., LLC*, 746 F. Supp. 3d 997,

C.J. responds that she plausibly alleges Santosa's participation in the requisite

"common venture" because the operation of a hotel is an "enterprise involving risk and

potential profit."  Docket No. 29 at 7 (quoting *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th

714, 724 (11th Cir. 2021)).  C.J. claims that it is not required that the venture at issue be

a sex trafficking venture and that she does not allege as much.  Docket No. 29 at 2, 7.

Rather, C.J. argues that it is enough that she alleges that Santosa "repeatedly rented

rooms to individuals it knew or should have known were involved in sex trafficking on

the premises."  *Id.* at 8.  Furthermore, C.J. argues that her allegation that Days Inn

employees served as lookouts for her trafficker also supports a plausible claim that

Santosa participated in a venture as required under § 1595(a).  *Id.* at 8-9.

A defendant participates in a venture where it has a "direct association" with the

plaintiff's trafficker.  *K.O.*, 728 F. Supp. 3d at 642 (citation omitted).  "Whether two

parties have a direct association is often determined by looking to the explicit actions of

staff members who directly aid traffickers, for example, by acting as lookouts for

Plaintiff's traffickers, informing the traffickers of police activity at the hotel, or warning

traffickers about guest complaints and high visitor traffic drawing unwanted attention."

*Id.* at 643 (internal quotations, alternations, and citation omitted).

Here, C.J. alleges that Santosa directly associated with her trafficker, stating that

her trafficker paid Days Inn employees to act as "lookout(s)/informant(s) for Plaintiff's

trafficker so as to inform the trafficker of police activity or other similar type alerts."

Docket No. 18 at 6, ¶ 34.  The Court finds that C.J. plausibly alleges that Santosa had a

---

1007 (D. Or. 2024); *A.D. v. Choice Hotels Int'l, Inc.*, 2023 WL 5510090, at *4 (M.D. Fla.
Aug. 25, 2023).

direct association with C.J.'s trafficker. "Courts have found that when employees assist traffickers by, for instance, serving as lookouts and warning traffickers about guest complaints, those allegations satisfy the participation element of a TVPRA beneficiary claim at the motion to dismiss stage." *A.B.*, 746 F. Supp. 3d at 1006. For instance, in *J.G.*, 619 F. Supp. 3d at 1236, the court found that the plaintiff sufficiently alleged a direct association between the defendant and her traffickers. There, the plaintiff alleged that the hotel employees would act as "lookouts" and would inform "the traffickers of police activity at the hotel as well as warning Plaintiff's traffickers about guest complaints and high visitor traffic drawing unwanted attention." *Id*. Further, the plaintiff alleged at least one of her traffickers paid hotel employees to act as lookouts for police activity. *Id*. Therefore, C.J. plausibly alleges that Santosa participated in a venture pursuant to § 1595(a) because she alleges the existence of a "direct association" between her trafficker and Santosa. *See id*.

### 2. *Whether Santosa knew or should have known the venture violated TVPRA*

C.J. alleges that Santosa "knew or should have known about the nature of the sex trafficking occurring at the subject hotel" due to several "commonly known sex trafficking red flags," which the complaint lists as follows:

> (a) constant foot traffic of sex buyers to the trafficker rented rooms to have sex with trafficked victims;
>
> (b) trafficked victims would walk around hotel grounds drug impaired and alcohol impaired, sleep impaired, hygiene impaired, behavior impaired, with bruises, and malnourished and in sexually explicit clothing;
>
> (c) suspicious individuals loitering outside the hotel rooms when a sex buyer would enter a room;

(d) inside the hotel rooms rented by the trafficker (or at the direction of the trafficker) there was a suspicious bunch of people and suspicious items including weapons, cash, drugs, drug paraphernalia, condoms, lubricants which was observed by housekeeping staff and in plain sight of housekeeping staff;

(e) trafficker monitoring hotel hallway or door of room or walking hotel perimeter;

(f) Plaintiff, C.J. soliciting for sex buyer business in common areas of the subject hotel at the direction of the trafficker[.]

Docket No. 18 at 7, ¶ 42. Santosa argues that these "red flags" are "insufficient to establish that Santosa knew or should have known that *Plaintiff* had been forced, coerced, or defrauded into performing commercial sex work." Docket No. 23 at 12. Rather, Santosa contends that the complaint's allegations are not "specific to an individual." *Id*. Furthermore, Santosa argues that these "red flags" could be indicative of "consensual sex work and/or some other illicit activity," as opposed to sex trafficking as defined in § 1591. *Id*. C.J. responds that she does in fact allege that the "red flags" applied to her, and that the signs were observed by hotel staff and "plausibly produce[s] inferences of trafficking by force, coercion, or fraud." Docket No. 29 at 12.

Santosa is incorrect that C.J. must allege that Santosa had actual or constructive knowledge of the fact that the plaintiff was being trafficked. The authority that Santosa cites for this proposition, *K.O.*, 728 F. Supp. 3d at 644, states that the "[t]he focus is not on whether the defendant had knowledge of the specific plaintiff's experience, but instead on whether the defendant had constructive knowledge that the *specific venture* violated § 1591." (emphasis added); *see also G.G.,* 76 F.4th at 558 ("we agree with the majority of courts that have addressed Section 1595's constructive-knowledge requirement that the statutory text does not require allegations and ultimately proof that

the defendant knew or should have known of the specific victim who has brought the civil action").

However, Santosa is correct that C.J. must allege that Santosa was on notice of a sex trafficking venture, as defined in 18 U.S.C. § 1591(a), as opposed to other criminal conduct. *See A.B.*, 746 F. Supp. 3d at 1007; *J.B. v. G6 Hosp., LLC*, 2020 WL 4901196, at *11 (N.D. Cal. Aug. 20, 2020); *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619-PAB-SKC, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021). Under § 1591(a), sex trafficking occurs where "means of force, threats of force, fraud, coercion . . . or any combination of such means [are] used to cause [a] person to engage in a commercial sex act." 18 U.S.C. § 1591(a). It is "not enough for a complaint to establish that a defendant hotel operator should have known of prostitution or general commercial sex activity taking place at its property." *A.B.,* 746 F. Supp. 3d at 1007. A plaintiff must allege "facts suggesting coercion" that allow the Court "to infer that motel or hotel employees should have known that human trafficking was occurring, as opposed to other criminal conduct, such as prostitution." *J.B.*, 2020 WL 4901196, at *11.

Many of the allegations in C.J.'s complaint support only the proposition that C.J. and her trafficker were engaged in commercial sex work. For example, while C.J's allegations that hotel staff observed "weapons, cash, drugs, drug paraphernalia, condoms, [and] lubricants" or that they observed C.J. "soliciting for sex buyer business in common areas of the subject hotel at the direction of the trafficker" are indicative of commercial sex work, as well as other illegal activity, these allegations do not support the inference that C.J. was engaging in this activity due to force, threats of force, fraud or coercion. Docket No. 18 at 7, ¶ 42. Moreover, while courts have relied on similar

allegations to those in C.J.'s complaint to find that the plaintiff had plausibly alleged a

TVPRA claim, these courts have also relied on allegations that provide more direct

evidence of force and coercion.  *See*, *e.g.*, *J.G.*, 619 F. Supp. 3d at 1238-39 (finding

that defendant should have known about sex trafficking based on plaintiff's allegations

that she had visible signs of physical injuries and poor hygiene, that plaintiff's traffickers

carried weapons and operated openly, and that hotel staff saw condoms, drugs,

weapons, and many towels, sheets, and tissues in plaintiff's room, but also relying on

the fact that plaintiff looked underage and was wearing inappropriate clothing); *S.Y. v.*

*Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1257 (M.D. Fla. 2020) (finding that defendant

should have known about sex trafficking based on allegations that plaintiff's hotel room

contained excessive used condoms and traffickers made excessive requests for towels

and linens in the rooms, but also relying on pleas and screams for help coming for

victim's rooms); *M.A. v. Wyndham Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 970

(S.D. Ohio 2019) (finding that defendant should have known about sex trafficking based

on allegations that hotel staff saw trash cans containing an extraordinary number of

used condoms, but also that hotel staff ignored plaintiff's pleas for help).

The Court, however, finds that C.J.'s allegations support an inference that

Santosa should have known that C.J. was being trafficked, namely, C.J.'s allegations

that (1) bruised, malnourished, drug and alcohol-impaired, sleep-impaired, and hygiene-

impaired trafficking victims in sexually explicit clothing would walk around hotel grounds,

and (2) that hotel staff witnessed C.J., her trafficker, and a steady procession of sex

buyers go in and out of the rooms rented by C.J.'s trafficker.  Docket No. 18 at 7, 8,

¶¶ 42, 45

Courts have found that allegations of injuries, such as bruises, support an inference that hotel staff should have known that the commercial sex activity was also part of a human trafficking operation.  *See*, *e.g.*, *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 178 (E.D. Pa. 2020) ("A.B. alleges Marriott knew or should have known about A.B.'s trafficking" in part because of "prominent bruising and injury on her body."); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020) (relying on the allegations that defendants ignored "obvious signs of human trafficking (bruises and physical deterioration) and indicators of commercial sex activity (bottles of lubricants, boxes of condoms, excessive requests for towels and linens, cash payments)"); *M.A.*, 425 F. Supp. 3d at 962, 968 ("She also alleges facts specific to her own sex trafficking, including a number of signs she alleges should have alerted staff to her situation," such as that "the hotel staff would have or should have observed visible physical changes, such as bruising. . . .  These allegations are sufficient to survive a 12(b)(6) motion to dismiss.").

Courts have also found that allegations of voluminous sex buyers are indicative of the fact that the commercial sex activity was coerced.  *See*, *e.g.*, *A.G. v. Northbrook Indus., Inc.,* 2022 WL 1644921, at *4 (N.D. Ga. May 24, 2022) (finding that "the amount of men visiting [plaintiff's] room, [and] the disturbances caused by the men visiting Plaintiff's room" demonstrate that defendant had constructive knowledge that plaintiff was being sex trafficked); *S.Y.*, 476 F. Supp. 3d at 1257 (finding plaintiff had plausibly alleged a TVPRA violation, in part, because she alleged there were "[m]ultiple men per day coming and going from the same rooms without luggage or personal possessions"); *A.B.*, 455 F. Supp. 3d at 193 (finding plaintiff had plausibly alleged a TVPRA violation, in

part, because she alleged that "as many as six men an evening entered each of the three hotels as an 'unannounced guest,' creating a 'voluminous and obvious' constant stream of male visitors to A.B.'s rooms accessed through the front door and main lobby of the hotels"); *Doe S.W.*, 2020 WL 1244192, at *5 (finding plaintiff had plausibly alleged a TVPRA violation, in part, because she alleged that, "[o]n average, three to five Johns would enter and leave the hotel guest room on a daily basis"); *Doe 4 v. Red Roof Inns, Inc.*, 2021 WL 12104819, at *7 (N.D. Ga. Feb. 3, 2021) ("Further, CC&S, Kuzzins, and Essex knew or should have known the venture violated the TVPRA because their employees, agents, and representatives saw the signs of sex trafficking exhibited by Plaintiff, the condition of the rooms in which she was trafficked, the frequency and volume of traffic of male buyers to Plaintiff's rooms, and the numerous other victims being trafficked at the hotel which evidenced sex trafficking, as opposed to mere prostitution.").

Although C.J.'s complaint lacks important details such as where and how large the victims' bruises were and how many men visited the rooms of trafficking victims on a regular basis, the Court finds that her complaint presents sufficient factual allegations to nudge her claim from possible to plausible in order to survive a motion to dismiss. *Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [her] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). The Court therefore finds that C.J. plausibly alleges that Santosa knew or should have known that the venture violated the TVPRA.

### 3. Whether the venture engaged in a violation of the TVPRA

Santosa argues that the complaint "does not articulate any specific factual support for Plaintiff's claims that she was trafficked." Docket No. 23 at 10. Specifically, she fails to "set forth any description how she was allegedly coerced, forced, or defrauded into performing commercial sex acts by her alleged trafficker." *Id.* C.J. responds that she "clearly alleges a distinct time frame for when the subject sex trafficking occurred." Docket No. 29 at 6. She argues that her allegations that she was "induced by force, fraud, and coercion by her trafficker to engage in commercial sex" at the Days Inn and "was psychologically and physically prohibited from escape from her trafficker" are sufficient to plead an underlying violation of the TVPRA. *Id.*; *see* Docket No. 18 at 2, ¶ 4. C.J. argues that her allegations of "red flags" are allegations that set forth that her trafficker "engaged in force, fraud and/or coercion to induce Plaintiff to have sex with others." Docket No. 29 at 6; *see* Docket No. 18 at 7-8, ¶ 42.

Courts have found that plaintiffs plausibly alleged a venture violates the TVPRA where they allege "facts from which [an] inference of force, threats, fraud, or coercion could be drawn." *42 Hotel Raleigh, LLC*, 717 F. Supp. 3d at 469. For instance, signs of visible injury and deterioration are "non-conclusory allegations from which inferences of force or fraud could be drawn." *Id.* at 469-470 (collecting cases).

As discussed previously, C.J. plausibly alleges that Santosa knew or should have known that there existed a sex trafficking venture that violated the TVPRA. Similarly, C.J. alleges facts from which it can be inferred that the venture did in fact violate the TVPRA. C.J. alleges bruised, malnourished, drug and alcohol-impaired, sleep-impaired, and hygiene-impaired trafficking victims in sexually explicit clothing, including

herself, would walk around hotel grounds.  Docket No. 18 at 7, ¶ 42.  She alleges that she was "induced by force, fraud, and coercion by her trafficker to engage in commercial sex" and was "psychologically and physically prohibited from escape from her trafficker".  *Id*. at 2, ¶ 4.  She states that she was "under fear of severe harm or death if she did not comply" with her trafficker and subject to "personal injury and the trauma physically and mentally of being induced to engage in commercial sex with multiple sex buyers per day".  *Id*. at 8, ¶ 46.  The Court finds that C.J. plausibly alleges that the venture at issue violated the TVPRA.

To the extent that Santosa argues that C.J. does not allege that she is an "individual who is a victim of a violation of this chapter" that is permitted to bring a civil action under 18 U.S.C. § 1595(a), the Court rejects that argument and finds that, at the 12(b)(6) stage, C.J. plausibly alleges that she is a victim pursuant to 18 U.S.C. § 1595(a).  *See Doe (S.S.) v. Red Roof Inns*, 2025 WL 724613, at *3 (S.D. Ohio Mar. 6, 2025) ("Plaintiff's allegation that she is 'a victim of sex trafficking within the meaning of § 1591' is sufficient, at the pleading stage, to establish that she is a 'victim of a violation of this chapter' under 18 U.S.C. § 1595(a).") (citation omitted); *A.H. v. Wynn Las Vegas, LLC*, 2024 WL 5264826, at *4 (D. Nev. Dec. 30, 2024) ("Plaintiff alleges that her traffickers used force, threats of force, and coercion to make her engage in commercial sex acts.  Thus, she is a 'victim' with standing to sue under the TVPRA.").

C.J. plausibly alleges that a venture existed that engaged in a violation of the TVPRA, Santosa knew or should have known that the venture violated the TVPRA, Santosa participated in the venture, and Santosa knowingly benefited from its

participation in the venture. [3]   Accordingly, the Court will deny Santosa's motion to

dismiss.

>    B. <u>Proceeding Under Initials</u>

"Proceeding under pseudonym in federal court is, by all accounts, an unusual

procedure." *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (quotation

omitted).  "Moreover, there does not appear to be any specific statute or rule supporting

the practice. . . .  To the contrary, the Federal Rules of Civil Procedure mandate that all

pleadings contain the name of the parties, *see* Fed. R. Civ. P. 10(a), and Rule 17(a)

specifically states that '[e]very action shall be prosecuted in the name of the real party in

interest.'" *Id.* (quoting Fed. R. Civ. P. 17(a)).  However, the Tenth Circuit has

recognized three "exceptional" circumstances permitting a party to proceed under a

pseudonym: (1) "cases involving matters of a highly sensitive and personal nature," (2)

cases involving a "real danger of physical harm," and (3) "where the injury litigated

against would be incurred as a result of the disclosure of the plaintiff's identity."[4]  *Id.*

(quoting *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992)).

---

[3] Santosa does not address whether C.J. plausibly alleges that Santosa knowingly benefited from the venture at issue.  *See* Docket No. 23.  Nevertheless, the Court finds that C.J. plausibly alleges that Santosa knowingly benefited from the venture.  She alleges that Santosa "repeatedly rented rooms to individuals that they knew or should have known were involved in sex trafficking."  Docket No. 18 at 7, ¶ 40. She claims that Santosa "received other financial benefit" in the form of payment for Wi-Fi services that "enabled the subject sex trafficking to occur (as Plaintiff was advertised by her trafficker online."  *Id.* at 6, ¶ 32; *see Doe v. Wyndham Hotels & Resorts, Inc.*, 2025 WL 725268 at *4 (E.D. Va. Mar. 6, 2025) ("District courts have held that renting rooms to a trafficker constitutes a 'financial benefit from a relationship with the trafficker' sufficient to satisfy the knowing benefit element.").

[4] These exceptional circumstances apply equally in considering whether a plaintiff may proceed under her initials rather than under a pseudonym.  *See, e.g., S.Y.*

"The public has a common law right to access judicial records and documents in civil cases, but the right is not absolute." *Doe v. FBI*, 218 F.R.D. 256, 258 (D. Colo. 2003). "[I]t is proper to weigh the public interest in determining whether some form of anonymity is warranted." *Femedeer*, 227 at 1246. "Ordinarily, those using the courts must be prepared to accept the public scrutiny that is an inherent part of public trials." *Id.* "The risk that a plaintiff may suffer some embarrassment is not enough" to permit the plaintiff to proceed anonymously. *Id.*

Plaintiff identifies herself as C.J., but did not seek leave to proceed under a pseudonym. Accordingly, C.J. must file a motion asking leave to proceed under a pseudonym.

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [Docket No. 23] is **DENIED.** It is further

**ORDERED** that plaintiff C.J. shall file a motion seeking leave to proceed under a pseudonym on or before **April 10, 2025**.

DATED March 27, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

_____

*v. Choice Hotels Int'l, Inc.*, 2021 WL 4167677, at *1 (M.D. Fla. Sept. 14, 2021) (permitting plaintiffs to proceed using initials S.Y. and C.S.).